[No. 2409.]

HANSON v. McCANN ET AL.

1. Contracts—Compromise—Consideration—Bankruptcy.

An agreement not to take the benefit of the bankrupt law and thereby endanger the whole debt, is a sufficient consideration to support a compromise of a judgment for a less sum than that due.

2. Pleading—Motions—Garnishment Proceedings—Evidence.

In a garnishment proceeding upon a judgment, on a motion to discharge the garnishee on the ground that an agreement of

compromise and settlement of the judgment had been entered into between the parties to the judgment, and had been performed by the judgment debtor, evidence was admissible to prove a consideration in support of the agreemnt of compromise, although the motion did not allege a consideration, and none was expressed in the contract itself.

3.   Contracts—Judgments—Compromise.

An agreement to accept less than the full amount of a judgment in satisfaction thereof, based upon a good and valid consideration, is governed by the law applicable to contracts generally.

4.   Contracts—Judgments—Compromise—Payments—Estoppel.

Where an agreement was entered into between the parties to a judgment, whereby in consideration that the debtor should not take the benefit of the bankrupt law, the creditor agreed to accept a less sum than the amount of the judgment in full satisfaction thereof, part to be paid cash and the balance in monthly installments on a certain day of the month, and the cash payment was made at the time, and the monthly installments were made two at a time on or near the day the first of the two was due, and the creditor accepted such payments and applied them on the agreement, without objection, although some of them were paid a day or two after due, after all but the final payment was made, which was tendered one day after it was due, the creditor was estopped to say that the debtor had not performed his part of the agreement because some of the payments and the final tender were made a trifle later than the agreement stipulated.

*Appeal from the District Court of Arapahoe County.*

Mr. A. S. BLAKE and Messrs. TALBOT, DENISON & WADLEY, for appellant.

Mr. CHARLES W. FRANKLIN, for appellees.

*Per Curiam.*—On January 17, 1897, a judgment was recovered by Conrad Hanson against P. McCann for $1,280.80. On the 31st day of December, 1898, Hanson and McCann entered into the following contract:

"Whereas, Conrad Hanson has obtained a judgment in the district court of Arapahoe county, Colo-

rado, against P. McCann, for about the sum of twelve hundred dollars ($1200); and, whereas, said McCann is desirous of compromising and paying said judgment; Therefore, it is agreed between said parties that said McCann should pay the sum of four hundred and fifty dollars ($450), as follows: One hundred dollars ($100) cash, and at least the sum of twenty-five dollars ($25) on or before the 10th day of each month, beginning with the 10th day of February, A. D. 1899, until the full sum of four hundred and fifty dollars ($450) has been paid, when said judgment shall be canceled; otherwise this agreement to be void, and all amounts paid to be credited on the full amount of said judgment.

"Witness the hands of the parties, this 31st day of December, A. D. 1898.

"(Signed)                    CONRAD HANSON,
          "By Geo. C. Norris, his Atty.
                    "P. McCANN."

Upon the execution of this contract, McCann paid Hanson $100, and afterwards made the following further payments: February 11, 1899, $50; April 1, 1899, $50; June 1, 1899, $50; August 5, 1899, $50; October 16, 1899, $50; December 15, 1899, $50. The contract was executed for Hanson by George C. Norris, his attorney, who, also, as attorney, drew and signed the receipts for the payments. Norris possessed the requisite authority to receive the money, sign the papers, and transact the business generally.

On January 27, 1900, McCann called on Mr. Norris, at his office in Denver, for the purpose of paying the remaining $50 due on the contract, and asked for a release of the judgment. Norris, as he testified, did not have the release in his office at that time, but said he would communicate with Mr. Hanson, who was in Leadville. McCann did not pay the money then, but left for his home in Central City. He

returned to Denver on Saturday, February 10, 1900, and on Monday, the 12th, again visited Mr. Norris. The latter had made no effort to obtain the release, and McCann, through his attorney, C. W. Franklin, tendered him $50 in gold, which he refused. He gave no reason for his refusal. Norris gave a receipt for each payment, as it was made. The payments, except the last two, were received for application on the agreement, or on the judgment, as per the agreement. The last two were, according to the receipts, taken for application on "judgment in case of *Hanson v. McCann.*"

On the 17th day of February, 1900, Hanson sued out process in garnishment on the judgment, and caused C. W. Franklin and the Kansas Burroughs Consolidated Mining Company, to be summoned as garnishees. McCann was in the employ of this company, at a salary of $200 per month. Franklin answered that he had $50 in his hands belonging to McCann, which was the same $50 which had been given him to tender to Norris. The company answered that its books showed $495 due McCann.

McCann then filed his motion in the cause for a dismissal of the garnishment, on the grounds that, by the terms of the contract between himself and Hanson, which he embodied in his motion, he was entitled, when the payments which it specified were made, to a satisfaction of the judgment; and that such payments had been made, except $50, which he had tendered, and which Hanson had refused to receive. The tender was renewed in the motion. The garnishees also severally interposed motions for a dismissal of the garnishment proceedings, on the grounds specified in McCann's motion. Hanson traversed the statements in the motions of the garnishees, and averred that the payments were not made at the times specified in the agreement, and that, therefore,

he, Hanson, had elected to apply them upon the judgment; and, further, that the agreement was without consideration.

At the hearing upon the motions and traverse, it was disclosed by the evidence that when the agreement was made, McCann was heavily involved beyond his ability to pay, and had contemplated taking the benefit of the bankrupt law. Mr. Hanson was informed by Mr. Franklin that unless a settlement of the claims against him could be made, McCann would be forced to go into bankruptcy. McCann himself laid his financial condition fully before Hanson's attorney, Mr. Norris. In a conversation on the subject between Mr. Franklin and Mr. Hanson, the latter said he would cut his claim down very materially and make a settlement, rather than have McCann go into bankruptcy. Mr. Hanson, in his testimony, said that in making the compromise, he was influenced to some extent by the intimation that McCann would go into bankruptcy. There was no specific agreement between Hanson and McCann that if the latter would not go into bankruptcy the former would receive the amount named in the contract in satisfaction of his judgment; but it seems quite clear to us that McCann's contemplated resort to the bankrupt law furnishes the reason, and the only reason, for the compromise that was agreed upon.

The points made for the appellant are, first, that there was no consideration for the contract; second, that, as no consideration had been pleaded, evidence concerning it was inadmissible; and, third, that the contract was no defense to any proceeding on the judgment, unless it had been fully performed according to its terms.

I. An agreement not to take the benefit of the bankrupt law and thereby endanger the whole debt, is a sufficient consideration to support an agreement

of compromise.—*Dawson v. Beall,* 68 Ga. 328. In the case at bar there was no formal agreement; but the appellant was advised that a resort to bankruptcy was contemplated by the appellee; and, to insure himself of a sum certain rather than run the risk of being compelled to take a smaller sum, or of losing his whole claim, he entered into the agreement of compromise. The contract is, therefore, supported by good and valid consideration.—*Hinckley v. Arey,* 27 Me. 362.

II. If this had been an independent suit brought upon the contract for the cancellation of the judgment, as the contract does not import a consideration, then, to make the complaint good, a consideration must have been alleged. And an objection that a complaint does not state facts sufficient to constitute a cause of action, is not waived by a failure to demur. It may be taken at any time. We have no such provision relating to any other pleading. But this is not an independent action, and there was no complaint. The paper to which the rule is sought to be applied was not a pleading at all. It was merely a motion interposed in the original cause to procure a dismissal of the garnishment. The same particularity of statement is not required in a motion as in a complaint. Its grounds may be set forth in general terms. The grounds of this motion were the contract, and its performance in so far as the appellant would permit its performance. The contract itself expressed no consideration, but proof of consideration might be made nevertheless.—Parsons on Contracts, * 430.

The reasoning of counsel not being applicable to motions, proof of the consideration was admissible in support of the purely general grounds on which the motion was based. Furthermore, we do not find in the appellant's abstract that any objection was

taken to the evidence on the ground that the motion did not aver a consideration. The hearing having been entered upon and had, without such objection, we know of no law which would authorize us to entertain the objection now.

III.  The contract being valid in its inception, is governed by the law applicable to contracts generally.  It has been held that an agreement to discharge an indebtedness by the payment of a less sum than is actually due, must be executed in strict accordance with its terms, both as to time and amount, or there is no satisfaction; and it is urged here that this contract was not performed in accordance with its terms, in that the installments which were paid were not paid at the times specified in the contract, and a portion of them were not paid at all.  The contract required $100.00 to be paid at once, and, afterwards, $25.00 on the 10th day of each month, beginning with the 10th of February, 1899.  The sum of $100.00 was paid immediately upon the execution of the contract.  The $25.00 due February 10, and the $25.00 due March 10, were paid on the 11th of February.  The payments due April 10 and May 10 were made on the 1st of April.  Those due June 10 and July 10 were received on the 1st of June.  On the 5th of August were paid the amounts due on the 10th of August and the 10th of September.  The October and November payments were made on the 16th day of October; and those for December, 1899, and January, 1900, on the 15th day of December.  Instead of separate payments of $25.00 being made, the amount of each payment was $50.00.  The payments were all ahead of time except as to the $25.00 due February 10, 1899, which was paid on the 11th of that month, together with the $25.00 due on the 10th of the next month; the $25.00 due on the 10th of October, 1899, which was paid on the 16th of the same month, with the

$25.00 due the 10th of the following month; and the $25.00 due December 10, 1899, which was paid on the 15th of that month, together with the $25.00 due on the 10th of January, 1900. The payment of February 11, although behind time as to $25.00, was credited on the agreement, as were also all the others, except those of October 16 and December 15, each of which was, as to $25.00, also overdue. It is evident that McCann did not notice the variance in the last two receipts. His intention was to pay the money upon the agreement, and he supposed that it was so received. Applying the rule which governs contracts generally, this agreement, in so far as concerns the payments made, was substantially performed by McCann. Unless some rule ought to be applied to· an agreement of accord which is not applicable to other contracts, it must be so held. Counsel, however, insist that the payments must have been made in exact and technical compliance with the agreement; and, further, that Hanson might at any time while payments were being made have repudiated the transaction, and also had the lawful right to refuse acceptance of the tender of complete performance, even if performance otherwise had been exact; and they are sustained in their position by a considerable number of the adjudicated cases, and, possibly, by the weight of authority. But the cases are not unanimous, and the extreme doctrine contended for is not the law in this state. In *Whitsett v. Clayton*, 5 Colo. 476, such an agreement as the one before us is put upon the same footing with any other contract resting upon a sufficient consideration; and it was there held that the creditor is not at liberty to repudiate it, or refuse to accept due performance when tendered.

If we understand counsel, Hanson claims that the fact that a few of the payments were made a trifle late

avoided the agreement, and remitted him to his remedy on the judgment. But he set the precedent himself at the very outset. He received the $25.00 which should have been paid on the 10th day of February, 1899, after it was due, and still credited it on the agreement, thus advising McCann that payment on the exact day was not necessary to continue the agreement in force. If this contract is to be placed in the same category with other contracts, it was, down to the time of final tender, sufficiently performed; if not, then, considering the trifling variance between its letter and its execution, we think very slight evidence of waiver should be sufficient to estop Hanson from saying that it was not performed, and that, by reason of his acceptance of money upon the agreement without protest after it was due, his objection that the payment of other money and the final tender were also a trifle late should be regarded as without force. We think the tender, as it was made, rendered the performance complete.

McCann might have executed his threat to go into bankruptcy, and so have relieved himself of his indebtedness. It is apparent from the evidence that he did not go into bankruptcy, and we think Hanson should be held to his agreement.

The judgment is affirmed.

*Affirmed.*